ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email: robert.leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 19-696 WHO |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date: August 17, 2023 |
| ANTHONY FRANCIS FAULK, | Time: 1:30 p.m. |
| Defendant. | Judge: Hon. William H. Orrick |

## INTRODUCTION

Defendant Anthony Francis Faulk has pleaded guilty to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. For nearly two years, he and his co-conspirators engaged in a "SIM swapping" scheme – duping cellphone companies into giving them control of victims' cellphone numbers, using that access to hack into email and other victim accounts, and ultimately stealing the victims' cryptocurrency or digital assets. The scheme was brazen and lucrative. Victims lost millions. Capitalizing on the rise in cryptocurrency prices, the defendant used his criminal proceeds to acquire a house, luxury cars, high-end jewelry and fashion accessories, and even music royalty rights. The defendant was twenty when the crime began and has accepted full responsibility, but the seriousness of the offense nonetheless requires a significant custodial sentence.

The defendant recently was sentenced to 48 months in prison in a related case in the Northern District of Georgia alleging a conspiracy to launder the proceeds of a SIM swapping scheme. *See* Judgment in a Criminal Case, *United States v. Faulk*, 20-CR-014-3 RWS (N.D. Ga. June 21, 2023). Applying the factors set forth in 18 U.S.C. § 3553(a) – particularly the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, and the need to afford adequate deterrence to criminal conduct – the government respectfully recommends that the Court impose a low-end Guideline sentence to run concurrently with the sentence in the Northern District of Georgia proceeding, to be followed by three years of supervised release, a $100 special assessment, and restitution in amount to be determined within 90 days of sentencing. The Court should also order forfeiture of the assets set forth in its Preliminary Order of Forfeiture. *See* ECF No. 78.

## FACTS

### I. THE OFFENSE CONDUCT

The Presentence Investigation Report ("PSR," ECF No. 76) and Plea Agreement (ECF No. 72) fairly summarize the offense conduct. From October 2016 through May 2018, the defendant and others engaged in a scheme to obtain cryptocurrencies and other money and property by fraud and extortion. The defendant targeted assets owned and controlled by executives of cryptocurrency-related companies and cryptocurrency investors. He and his co-conspirators used fraud, deception, and social engineering techniques to induce cellphone service providers to transfer or port cellphone numbers from SIM cards[1] in devices possessed by victims to SIM cards in devices possessed by the conspirators. Having gained control of victims' cellphone numbers, the defendant and his co-conspirators used additional deceptive techniques to gain access to email, electronic storage, and other accounts of victims and ultimately to cryptocurrency accounts of victims, which they looted. In some instances, the defendant and his co-conspirators also extorted victims of the SIM swapping scheme by threatening further invasions of privacy or digital asset thefts.

---

[1] A SIM card—short for Subscriber Identity Module or Subscriber Identification Module—is a technology used to identify and authenticate subscribers on mobile phone devices.

This brazen scheme caused approximately $3,405,600.58 in losses to more than 10 victims. PSR ¶ 68. At least eleven others were targeted but appear to have suffered no monetary loss. *Id.* ¶ 62.

The motive for the scheme is manifest: greed. The defendant used the proceeds of his crime to buy a nearly $1 million dollar home, multiple luxury and high-end cars (a Ferrari, a Mercedes, a Cadillac, a Nissan Rouge, and a Chevy Silverado), diamond jewelry, a Rolex, Tiffany earrings, and a Louis Vuitton handbag and wallet. *See* ECF Nos. 20, 78.

## II.     PROCEDURAL HISTORY

On December 10, 2019, the Grand Jury charged the defendant with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and one count of interstate communications with intent to extort, in violation of 18 U.S.C. § 875(d). ECF No. 1. The defendant was arrested and made an initial appearance on December 12, 2019. *See* PSR ¶ 4.

On June 20, 2020, the government filed a Bill of Particulars for Forfeiture of Property. ECF No. 20. Among other things, the government sought forfeiture of numerous assets seized at or near the time of his arrest in December 2019 including: three J.P. Morgan Chase accounts totaling approximately $12,525,592, $6,242,919, and $18,118, respectively; the Ferrari, Mercedes, Cadillac, Nissan Rouge, and Chevy Silverado; jewelry; and luxury fashion accessories. *Id.*

On March 3, 2023, the defendant pleaded guilty to the wire-fraud conspiracy count. ECF No. 72.

After his arrest on the indictment in this matter, the defendant was charged by a grandy jury in the Northern District of Georgia with two counts of money laundering conspiracy. *See* Indictment, *United States v. Barr, De Rose, & Faulk*, 20-CR-014 RWS (N.D. Ga. Mar. 3, 2023). That indictment generally alleges that, in July 2017, two individuals, Robert Barr and Corey De Rose, defrauded victims J.Ki. and R.M. through a SIM swapping scheme. That indictment further alleges the defendant, in July 2017, conspired with Barr and De Rose to launder the proceeds. The defendant pleaded guilty to one count of money laundering conspiracy, was sentenced to 48 months in prison, and was ordered to pay $660,000 in restitution to J.Ki. and $8.5 million in restitution to R.M. *See* Judgment in a Criminal Case, *United States v. Faulk*, 20-CR-014-3 RWS (N.D. Ga. June 21, 2023).

**THE SENTENCING GUIDELINES CALCULATION**

The PSR calculates the applicable Guidelines as follows:

| | | | |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. §§ 2X1.1(a)(1), 2B1.1(a)(1) | | 7 |
| b. | Specific offense characteristics, U.S.S.G. § 2B1.1(b) | | |
| | Loss between $1.5 and $3.5 million, U.S.S.G. § 2B1.1(b)(1) | | +16 |
| | Offense involving 10 or more victims, U.S.S.G. § 2B1.1(b)(2)(A)(i) | | +2 |
| c. | Acceptance of responsibility, U.S.S.G. § 3E1.1 | | -3 |
| d. | Total Offense Level | | 22 |

ECF No. 72 ¶ 7. The defendant did not object to this calculation, which is consistent with his Plea Agreement. ECF No. 76 Addendum. The defendant falls within Criminal History Category II. *Id.* ¶ 82.[2] Thus, for Offense Level 22, the Guidelines recommend a sentence of 46 to 57 months in custody. *Id.* ¶ 115. In the Plea Agreement, the government agreed to recommend a sentence within the range associated within the range of Offense Level 22. ECF No. 72 ¶ 17.

**ARGUMENT**

**I.   LEGAL STANDARD**

The overarching goal of a sentencing court is to impose a sentence that is sufficient to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment." *United States v. Ressam*, 679 F.3d 1069, 1088-89 (9th Cir. 2012) (en banc); *see United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); 18 U.S.C. § 3553(a). The Court should begin the sentencing process by correctly calculating the applicable Guidelines range and must "remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). The Court should then consider the factors outlined in Section 3553(a) to determine the appropriate sentence. *Ressam*, 679 F.3d at 1089. If the Court

---

[2]   The defendant is in Criminal History Category II because of the conviction in the related case in the Northern District of Georgia. The Court may wish to consider that, had the defendant been charged in a single district, his Criminal History Category would be I, equating to a Guidelines range of 41-51 months in prison.

determines that a sentence outside of the Guidelines range is warranted, it must ensure that the "justification is sufficiently compelling to support the degree of the variance." *Id.* (internal quotation omitted). "[A] major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50

The Section 3553(a) factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocations training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established in the Guidelines;

(5) any pertinent policy statement by the Sentencing Commission;

(6) the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims.

*See* 18 U.S.C. § 3553(a)(1)-(7).

## II. A 46-MONTH CUSTODIAL SENTENCE WOULD VINDICATE THE INTERESTS SET FORTH IN 18 U.S.C. § 3553(A)

The government respectfully submits that the following Section 3553(a) factors should lead the Court to impose a custodial sentence of 46 months, the low-end of the Guidelines, to run concurrently with the sentence imposed in the Northern District of Georgia.

First, the nature and circumstances of the offense are serious. The scheme here was undeniably fraudulent, driven by financial gain, and corrosive to a nascent industry. The defendant used wires to conduct a fraud scheme, intruded on private computer systems, purloined the identity of numerous victims, and engaged in many transactions to cover his tracks – all to steal money. Only a significant custodial sentence will reflect the seriousness of the offense. Indeed, the Court need only review the preliminary order of forfeiture and victim impact statements to understand that this scheme was driven by craven financial desires and a disregard for the privacy and peace of mind of victims.

Second, a significant custodial sentence is necessary to promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct. Fraud cases such as this are difficult to develop. Cryptocurrency transactions can be difficult to trace. Fraudsters in this space need to know their crimes will be met with serious consequences, otherwise no one will be deterred and it will promote disrespect for the federal fraud laws.

Finally, victim impact statements speak to the seriousness of the defendant's conduct. One, who suffered no monetary loss, wrote:

> In the moment, the attacks felt extremely intrusive and violating. When I heard the words from the attacker "By now you know that we've stolen your identity" (or words to that effect), my heart rate spiked and remained high for hours. I was able to continue working to recover my accounts, nevertheless I had to stop several times to lower try to calm myself. This was a very emotionally-stressing and traumatic experience that I do not wish on anyone.
>
> This hack felt similar to a time in the 1990s when I was drugged, then physically assaulted by people who I thought were friends: in 2017 the attackers pretended to be trusted agents (with Verizon), took over my phone number, then my gmail and twitter accounts, then finally asked for money in return for their "white hat" exposure of my bad security practices. Similar to the physical attack, even after things were supposedly at a normal state, I didn't know all that had occurred and felt [completely] stressed and violated.

## III.   RESTITUTION, FINE, AND FORFEITURE

Restitution is mandatory in the present case. As part of his Plea Agreement, the defendant agreed to pay restitution "in an amount to be set by the Court" and recognized it could exceed $550,000 ECF No. 72 ¶ 9.

The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, requires restitution to victims of criminal offenses, such as mail fraud, where an identifiable victim has suffered pecuniary loss. *See* 18 U.S.C. § 3663A(c). Under the MVRA, a victim is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered, including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). The purpose of restitution under the MVRA is not to punish the defendant, but to make victims whole by restoring the value of the losses suffered as a result of the

defendant's crime. *See United States v. Crandall*, 525 F.3d 907, 916 (9th Cir. 2008) (citing *United States v. Gordon*, 393 F.3d 1044, 1052 n.6 (9th Cir. 2004)).

The remedial purpose of the MVRA grants "district courts a degree of flexibility in accounting for a victim's complete losses," but the Court "may utilize only evidence that possesses sufficient indicia of reliability to support its probable accuracy." *See United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) (internal quotation marks, brackets, and citations omitted). In this regard, the Ninth Circuit recognizes that "victim affidavits will generally provide sufficient, reliable evidence to support a restitution order." *Id.* The government bears the burden of proving restitution amounts by a preponderance of the evidence. *United States v. Anieze-Smith*, 923 F.3d 565, 571 (9th Cir. 2019) ("[The MVRA] minimally requires that facts be established by a preponderance of the evidence ....").

In the present case, the PSR recommends restitution to 11 victims who suffered a total loss of $2,816,433.51. PSR ¶ 124. The United States agrees restitution should be ordered to these 11 victims. A 12th victim, J.Ki., was awarded restitution in the Northern District of Georgia case. The judgment in the Northern District of Georgia case also awards restitution to R.M. The government requires additional time to determine whether J.Ki. and R.M. should be awarded restitution in this matter and respectfully requests that a separate restitution hearing be set within 90 days of sentencing.

The government does not recommend a fine.

The defendant should be ordered to pay a special assessment of $100.

Finally, forfeiture should be ordered as in the Court's preliminary order. *See* ECF No. 78.

## CONCLUSION

For these reasons, the government recommends the Court sentence the defendant to 46 months in custody, to run concurrently with the Northern District of Georgia judgment, and three years of supervised release, and order him to pay a special assessment of $100 and restitution to be determined at a separate hearing. The Court should also order forfeiture as set forth in its preliminary order.

DATED: August 10, 2023

ISMAIL J. RAMSEY
United States Attorney

*Robert S. Leach*

ROBERT S. LEACH
Assistant United States Attorney

U.S.' SENTENCING MEM.
*U.S. v. FAULK,* CR 19-696 WHO        7